IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LESTER GILKES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILADELPHIA EXPRESS TRUST, )<br>HAPAG-LLOYD USA, LLC and )<br>MARINE TRANSPORT )<br>MANAGEMENT )<br>)<br>Defendants. ) | CIVIL ACTION NO:<br>4:20-cv-00235-RSB-CLR |

## DEFENDANTS' MOTION TO DISMISS

COME NOW PHILADELPHIA EXPRESS TRUST, HAPAG-LLOYD USA, LLC, AND MARINE TRANSPORT MANAGEMENT (collectively "Defendants"), and by and through their undersigned counsel of record, file this Motion to Dismiss in the above-referenced matter. Defendants show this Honorable Court that Plaintiff's Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) as follows:

### I. INTRODUCTION

Lester Gilkes is a longshoreman who has sued Defendants, who own, maintain and operate the M/V Philadelphia Express (the "Vessel") for purported exposure to the novel coronavirus, COVID-19, despite having *never contracted* COVID-19. He claims that he is entitled for damages from the mental suffering and stigma that his COVID-19 test—which was negative—exposed him to.

1

These allegations are factually counterintuitive, legally unworkable, and barred by precedent on multiple fronts. First, as a factual matter, Gilkes seeks unique legal treatment for what has become a routine experience for millions of people worldwide during the worst global pandemic in a century. Since February 2020, about 200 million COVID-19 tests have been performed worldwide.[1] Lester Gilkes seemingly brought this action because he believes that the COVID-19 test he took, uniquely, creates a legal cause of action. He is incorrect.

These allegations, if allowed to continue past the pleadings phase, would also create a wildly unworkable regime going forward. If the Court does not dismiss Gilkes' Complaint, it will create a precedent that every worker who has reported to work since March can invoke. After all, essentially every American worker has felt some fear of being exposed to COVID-19—to say nothing of nonworking Americans, retirees, and schoolchildren. Creating a cause of action for mere fear of a worldwide, deadly virus would immediately and irreparably consume the courts.

Fortunately, that legal upheaval need not occur, because Plaintiff's sole cause of action—state-law fraud—cannot clear the Fed. R. Civ. P. 12(b)(6) threshold. First, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, preempts the only claims Gilkes has pleaded, so Plaintiff's only cause of action cannot proceed. Second, even if his fraud claim were not federally preempted, he fails to adequately plead it. Gilkes does not procedurally comply with the Fed. R. Civ. P. 9(b) pleading-particularity standard, and he substantively fails to plead facts generating a cause of action for state-law fraud. And even if *those* problems did not exist, specific defenses also bar his claim: the Georgia legislature has specifically insulated business owners

---

[1] *Total Covid-19 Tests,* OUR WORLD IN DATA, *available at* <https://ourworldindata.org/grapher/full-list-total-tests-for-covid-19?time=2020-02-20..latest> (last accessed Sept. 26, 2020).

2

against liability for COVID-19 exposure, and neither maritime nor Georgia law acknowledges a cause of action for fear of exposure to disease.

Plaintiff has failed to plead facts that, taken as true, would confer a cause of action. The Court should **DISMISS** his Complaint.

## II.     BACKGROUND[2]

Lester Gilkes is a longshoreman who works cargo vessels at the Port of Savannah. Complaint at 3 (attached as part of Doc. No. 1-1). On July 11-12, 2020, he worked as a longshoreman aboard the vessel *Philadelphia Express* at Container Berth CB-3 of the Garden City Terminal of the Georgia Ports Authority. *Id.* Defendants own, manage and operate the *Philadelphia Express*. Gilkes claims that Defendants knew that a person on the *Philadelphia Express* had COVID-19 and asserts (without citation) that the vessel was required to fly a quarantine flag. *Id.* at 4. Gilkes does not plead any facts about which Defendants knew which person onboard the vessel had COVID-19, when they discovered this fact, how they discovered this fact, or whether they reported that fact to any relevant authorities, including the Centers for Disease Control regional office in Atlanta, Georgia. *See, generally,* Complaint (part of Doc. No. 1-1).

Gilkes claims that he was potentially exposed to COVID-19 on the vessel, but he did not contract the virus. *Id.* Rather, all of his purported damages flow from his *fear* of contracting the disease—a fear that did not come to pass. Gilkes claims that he suffered lost wages while he took a COVID-19 test and secured its results, but he makes no separate claim for lost wages in his Complaint. *Id.* at 4. Rather, his only pleaded damages are for "mental pain and suffering" and attorneys' fees pursuant to a state-law theory of fraud. *Id.* at 5. He seemingly believes that he has

---

[2] Defendants treat Plaintiff's well-pleaded factual allegations as true, as the Court must do when evaluating a Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009). However, Defendants deny all factual allegations made against them.

3

somehow been "stigmatized" by taking a COVID-19 test and having it return *negative*. He does not allege that he has not been able to return to work, and he does not allege that any Defendants told his employer how to handle his (non-exposure) to COVID-19. He pleads no other cause of action, though he requests attorneys' fees appurtenant to his single fraud claim.

Defendants timely removed Plaintiff's Complaint to this Court on September 30, 2020 and now file this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 81, showing that Plaintiff's Complaint fails to state a claim and must be dismissed.

### III. ARGUMENT AND CITATION OF AUTHORITY

#### A. Standard of Review

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (affirming district court's dismissal of claim) (citing case). Moreover, only well-pleaded *facts* may thwart dismissal under Rule 12(b)(6). The Eleventh Circuit Court of Appeals mandates that district courts "eliminate any allegations in the complaint that are merely legal conclusions" before deciding a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Allegations of fraud demand even more scrutiny. Under Fed. R. Civ. P. 9(b), claims of fraud must be pleaded with particularity. As construed by the Eleventh Circuit, that is a strict standard. The Eleventh Circuit has noted that the "particularity rule serves an important purpose

4

in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior," and that Rule 9(b) is only "satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting case), *superseded by statute on other grounds as noted in Arthurs v. Global TPA LLC*, 208 F. Supp. 3d. 1260, 1266-67 (M.D. Fla. 2015).

### B. The LHWCA preempts any state-law claim.

Start with Plaintiff's fundamental pleading problem: his Georgia cause of action is preempted by the LHWCA (the "Act"). The Act completely and expressly preempts any state-law claim that Gilkes brings here, including his sole pleaded cause of action for fraud. Generally, in "pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 111 (2014). "The Supreme Court has identified three circumstantial categories, where federal law preempts state law. First is express preemption, where Congress defines explicitly the extent to which its enactments pre-empt state law." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (citation omitted). In other words, the most obvious way in which federal law preempts state law is when Congress says it does.

That is the case here. Congress explicitly provided that the LHWCA would preempt any state-law claim for a longshoreman purportedly injured in the course of his duties. The LHWCA provides that "[t]he remedy provided in this subsection <u>shall be exclusive</u> of all other remedies

against the vessel except remedies available under this chapter." 33 U.S.C.A. § 905 (emphasis added). This language explicitly preempts any Georgia causes of action or remedies.

Courts in this circuit have confirmed that Section 905(b) expressly preempts any state-law causes of action. The Southern District of Florida has noted that "federal maritime law and the LHWCA preempt the claims brought pursuant to the Florida Wrongful Death Act" in 2009. *In re Ms Madeleine Schiffahrtsgesellschaft mbH & Co.*, No. 08-61757-CIV, 2009 WL 3296668, at *2– 3 (S.D. Fla. June 8, 2009). In analyzing Section 905(b)'s express-preemption provision, that court held that the "statute squarely applies to the claims here" regarding wrongful death and injury. Other prominent maritime courts agree: the Southern District of New York held that "if an injured employee's tort claims against a vessel owner fall under the federal courts' admiralty jurisdiction, section 905(b) preempts state claims against the vessel owner . . . ." *In re Donjon Marine Co., Inc.*, No. 07 CIV. 3840, 2008 WL 3153721, at *4 (S.D.N.Y. Aug. 5, 2008).

Here, all of Plaintiff's claims against Defendants fall under the federal courts' admiralty jurisdiction and the Act, because they relate to an alleged danger Plaintiff encountered during core lashing and offloading operations onboard the vessel which was on a navigable body of water. Plaintiff's Complaint alleges that he was exposed (but did not contract) COVID-19 during his longshoring operations, while on the vessel itself. Complaint at 3 (Doc. No. 1-1). These on-vessel duties are the central acts that constitute the core of the LHWCA's coverage scheme, and the LHWCA governs exposure to toxic or infectious agents during onboard activities. *See, e.g., Minnick v. United States*, 767 F. Supp. 115, 116 (E.D. Va. 1990) (longshoreman's claim that he was overcome by toxic fumes in cofferdam held preempted by Section 905(b)). Because Plaintiff cannot possibly argue that exposure to a hazardous/infectious agent on a vessel during longshoring operations is outside the core duties that Section 905(b) governs, he cannot avoid preemption under

6

that statute. It provides his lone remedy, but he has pleaded no cause of action under that section. Accordingly, his Complaint must be dismissed.

### C. Plaintiff fails to adequately plead fraud, both procedurally and substantively.

Plaintiff's only pleaded cause of action against Defendants is for "Fraud and Deceit." *See* Complaint at 5 (Doc. No. 1-1). But he does not plead that cause of action with the particularity required to survive under federal law. The Eleventh Circuit requires a fraud complaint to identify "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting case), *superseded by statute on other grounds as noted in Arthurs v. Global TPA LLC*, 208 F. Supp. 3d. 1260, 1266-67 (M.D. Fla. 2015).

Plaintiff pleads no facts that satisfy these requirements. Plaintiff does not plead specifically what statements or omissions that Defendants made to him, nor does he plead when any omitted statements should have been made or in what format. He does not plead which person or professional title was responsible for making any statements he claims were omitted. For that matter, he does not differentiate between the Defendants at all, even though all Defendants occupied different roles. He does not plead facts showing what he would have done differently or how different acts from Defendants would have changed his behavior. Plaintiff also does not plead any facts demonstrating that the vessel knew that one of its crew members was infected with COVID-19, only making the conclusory allegation that the vessel was aware of that fact.

7

These bare-bones pleadings are not enough under Rule 9(b). District courts in this circuit have dismissed fraudulent-concealment claims premised on, for example, allegations that "Defendants undertook active and ongoing steps to conceal the defect" as "wholly insufficient" to meet the standard. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017). To stand any chance of surviving, those plaintiffs would have had to provide "allegations specific to the participation of each Defendant, . . . allegations concerning who was involved in the fraudulent scheme, the time period or location of the scheme, or how each of the Defendants accomplished the fraudulent concealment." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017). In short, Plaintiff's bare-bones complaint would likely fail under the default *Twombly* standard, but it certainly fails scrutiny under Rule 9(b)'s higher standard.

But Gilkes does not just procedurally fail in his fraud pleading. He also substantively fails to plead facts demonstrating either a legally valid duty underpinning the purported fraudulent failure to disclose *or* proximate causation arising from that failure.

As to the lack of any duty underpinning the purported failure to disclose, Defendants can locate no legal duty for the vessel to "fly a quarantine flag," the only disclosure-related duty Gilkes's Complaint identifies. Rather, applicable Centers for Disease Control requirements announce that a vessel whose sailor has certain symptoms must report it to the regional CDC office, not to longshoremen. *Federal Regulations for Reporting Death or Illness on Ships Destined for the United States*, CDC, <https://www.cdc.gov/quarantine/maritime/federal-regulations-reporting-illness-death-ships-destined-united-states.html> (last accessed Sept. 23, 2020) ("According to U.S. federal regulations, all deaths and ill persons displaying any of the following signs and symptoms **must** be reported to CDC"). Those requirements are enshrined in the Code of Federal Regulations, which likewise commands that this vessel needed to report any sailor with specific

8

symptoms to the Atlanta division of the CDC, not to local longshoremen by flying a flag. *See* 42 C.F.R. §71.21 ("The master of a ship destined for a U.S. port shall **report immediately to the quarantine station** at or nearest the port at which the ship will arrive, the occurrence, on board, of any death or any ill person among passengers or crew (including those who have disembarked or have been removed) during the 15-day period preceding the date of expected arrival or during the period since departure from a U.S. port (whichever period of time is shorter).") (emphasis added).

That presents two problems for Gilkes. First, he does not plead that Defendants failed to report any allegedly symptomatic mariner to the CDC in Atlanta. *See generally* Complaint (Doc. No. 1-1). He has pleaded no breach of the only even *potentially* legally cognizable duty that Defendants can locate. Without pleading a disclosure-duty breach, he cannot support a fraud claim based on a failure to close.

Second, even if Gilkes *had* pleaded that the vessel failed to report the purportedly ill mariner to the CDC in Atlanta, he does not plead that the CDC would have an affirmative duty to inform the ILA Local 1414 in time for Gilkes to avoid whatever exposure he claims.[3] That failure dooms his cause of action, because simply pleading a failure to report a fact to a government agency does not state a claim for harm to a third party if there is no plausible allegation that the agency would have timely informed that third party. For example, in the pharmaceutical context, a plaintiff "ultimately must allege that if Defendant had properly filed MDRs in accordance with FDA regulations, this information would have reached Plaintiff or her physician in time to prevent

---

[3] Since Gilkes never contracted COVID-19, this remains a completely theoretical debate, but his allegations fail even by their own internal logic.

her injury." *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1286 (N.D. Ga. 2014). In *Cline*, this proximate causation breakage existed for a simple reason:

> the FDA's disclosure of MDRs to the public is not guaranteed. *See* 21 C.F.R. § 803.9 ("[the FDA] *may* disclose to the public any report ... submitted under this part") (emphasis added). Thus, there is no guarantee that the FDA would have disclosed MDRs that were timely filed by Defendant.

*Cline*, 17 F. Supp. 3d at 1286 (footnote omitted). *See also Jacob v. Curt*, 898 F.2d 838, 839 (1st Cir. 1990) (in absence of plausible allegation that author of critical letter controlled subsequent government decision that shut down the health clinic that the letter attacked, no causation was pleaded because government was independent actor).

The same principle governs here. The relevant federal regulations grant the CDC broad discretion in how it treats reports of a seafarer who displays symptoms of infection. First, the CDC need not inspect the vessel at all unless "the Director determines that a failure to inspect will present a threat of introduction of communicable diseases into the United States, as **may** exist when the carrier has on board individual(s) reportable in accordance with § 71.21 or meets the circumstances described in § 71.42." 42 C.F.R. § 71.31 (emphasis added). Further, the "Director **may** require detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease." *Id.* (emphasis added). Defendants can locate no provision *requiring* the Director to inform local longshoremen of a report under Section 71.42, nor requiring him to inform any specific subset of longshoremen within a time guaranteed to prevent them from performing cargo operations. And without those provisions, Gilkes cannot plead facts showing proximate causation between any alleged failure of Defendants to report illness to the CDC and his non-exposure event aboard the vessel.

In sum, Gilkes identifies no provision requiring the vessel to fly a specific flag. He ignores the vessel's *actual* duty if it did know that a sailor had COVID-19—which was, at most, to contact

the CDC regional office in Atlanta. He does not plead that the vessel failed to do that. And even if the vessel *had* failed to do that, there is no proximate causation as a matter of law between that alleged failure and Gilkes's non-exposure to COVID-19.

Moreover, Gilkes has not pleaded an actionable case of fraud-by-omission because he does not plead facts showing the existence of a confidential or fiduciary relationship between him and Defendants. Generally, for an omission to constitute actionable fraud, the party failing to offer up the relevant information must be in a confidential relationship with the defrauded party. *Kienel v. Lanier*, 190 Ga. App. 201, 203, 378 S.E.2d 359, 360 (1989). And business counterparties almost never meet the test:

> [I]n the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone. … For this reason, most business relationships are not generally confidential or fiduciary relationships. … Where parties are engaged in a transaction to further their own separate business objectives, there is no duty to represent or advance the other's interests.

*Newitt v. First Union Nat. Bank*, 270 Ga. App. 538, 545–46, 607 S.E.2d 188, 196 (2004). Here, whether Gilkes had "trust and confidence in [the vessel's] integrity," there was no confidential relationship, and all parties were fundamentally advancing their own interests—the stevedores advancing their company's interest in completing the transaction, and the vessel its interest in ensuring cargo was offloaded. Pretermitting whether failure to disclose a purported infection in such circumstances would give rise to another cause of action, it states no case for fraud.[4]

---

[4] It appears that Plaintiff refers only to Georgia fraud in his pleading, not to any separate maritime-law action bearing that title. Indeed, most fraud cases in the maritime context are brought in the insurance context, as other statutory schemes and common-law duties overlap conventional state-law fraud and provide concomitant protections. *See* Thomas J. Schoenbaum, *Maritime fraud*, 2 ADMIRALTY & MAR. LAW § 19:25 (6th ed.) (describing species of maritime fraud primarily related to theft, charter fraud, scuttling fraud, and documentary fraud).

Gilkes's Complaint fails to plead fraud both procedurally and substantively. It does not plead any of the basic elements of fraudulent statements or omissions that Defendants purportedly made, how and when they made them, how and when they had the relevant information, or any of the other specific facts that Eleventh Circuit 9(b) law requires. Substantively, Gilkes pleads neither facts showing an obligation to disclose or proximate causation. Gilkes cannot even plead the liability elements of a case that presents no legal damages. His pleading fails under any federal pleading standard, and certainly under the rigorous Rule 9(b) standard that governs his entire Complaint.

### D. **The damages Plaintiff claims would not be cognizable even absent those threshold problems.**

Even if the LHWCA did not preempt Plaintiff's entire Complaint, and even if Plaintiff's fraud claim failed for both procedural and substantive reasons, he would face still further hurdles to recovery. First, the damages that Plaintiff claims are not legally recognized. Second, Georgia law insulates businesses within the state from liability for COVID-19 infections in most situations when they post a placard warning of the dangers of the virus. Because the Ports Authority posted that placard, no infection (or here, total lack of infection) on the premises can support recovery.

#### *1. Fear of catching COVID-19 is not a cognizable injury.*

Plaintiff's Complaint pleads no damages. As federal courts applying admiralty law have held just this summer, there is no potential recovery associated with the fear of contracting COVID-19 or the "stigma" associated with that fear.

The Central District of California explained why three months ago. In *Weissberger v. Princess Cruise Lines, Ltd.*, that Court explained that controlling Supreme Court precedent

mandates that any litigant seeking to recover under a negligent infliction of emotional distress theory[5] must adequately plead a physical impact accompanying his fear. *Weissberger v. Princess Cruise Lines, Ltd.*, No. 2:20-CV-02328-RGK-SK, 2020 WL 3977938, at *3 (C.D. Cal. July 14, 2020). It further explained that negligent infliction of emotional distress is the only potential general-maritime-law theory under which COVID-19 exposure without contraction might be cognizable. *Id.*

Under that precedent, this Court's analysis turns on whether *potentially* encountering an airborne particle of SARS-COV2-19 virus is a "physical impact," because absent a physical impact, Gilkes cannot recover. *See id.* But as binding precedent demonstrates, the act of a particulate toxin or pathogen touching the body is not a physical impact and therefore cannot support recovery for emotional damages standing alone. The Supreme Court made that principle clear in the context of mesothelioma and asbestosis, when it held that a litigant who encounters asbestos particles but does not develop disease has not been physically impacted. *Id.* (citing *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997)). Accordingly, as the Supreme Court further held, there can be no emotional-damages recovery for that worker simply because he feared asbestosis or mesothelioma. The *Weissberger* Court correctly applied that precedent in the COVID-19 context, holding that maritime COVID-19 exposure is indistinguishable from asbestos exposure, and neither provides the physical impact needed to anchor a negligent infliction of emotional distress claim. To hold otherwise would expose the entire maritime industry to the "unlimited liability" that the *Metro-North* Court specifically sought to cabin. *Id.*

---

[5] Although Plaintiff attempts to reframe this cause of action as "fraud," presumably in an ill-advised attempt to bypass the phalanx of cases denying the relief he seeks, he fails to plead fraud as shown above.

Other federal courts have followed *Weissberger*'s holding. For example, in *Parker et al. v. Princess Cruise Lines Ltd.*, the Central District of California affirmed *Weissman*'s physical-impact analysis when cruise-line passengers sued for potential exposure to COVID-19. No. 2:20-cv-03788-RGK-SK, Doc. No. 54 (C.D. Cal. Sept. 18, 2020).[6] The *Parker* Court held that general maritime law governed all of the passengers' claims, not any state-law provisions. *Id.* Then it addressed the startling facts pleaded in the Complaint: Defendant failed to employ proper screening protocols for COVID-19, and Defendant *knew* that passengers on the prior journey (some of who overlapped with the subject journey) were symptomatic. *Id.* at 1. Yet even despite those allegations, the *Parker* Court agreed with *Weissberger* and held that cruise-ship exposure to COVID-19 without actual symptoms of the disease was a "classic exposure-only scenario discussed in *Metro-North*." *Id.* at 4. And even plaintiffs who experienced COVID-19 symptoms could not adequately plead causation without a positive COVID-19 test. *Id.* at 6. The *Parker* Court dismissed all claims, despite far more egregious allegations than Gilkes offers here.

Georgia law tracks these federal precedents. Under Georgia law, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Oliver v. McDade*, 297 Ga. 66, 68 n.3, 772 S.E.2d 701, 703 n.3 (2015) (citing case). For the reasons shown above, Plaintiff pleads no physical impact here, so his claim for emotional damages is barred. In fact, even with more concrete physical impacts, Georgia courts have rejected claims for emotional distress. For example, in *Russaw v. Martin*, the Court of Appeals held that being stuck with a needle and the concomitant fear of HIV exposure was not enough of an impact, and represented too speculative a danger, to

---

[6] As of September 28, 2020, *Parker* had not yet been posted to Westlaw. A copy is accordingly attached hereto as **Exhibit 1.**

allow any recovery. *Russaw v. Martin*, 221 Ga. App. 683, 686–87, 472 S.E.2d 508, 512 (1996) ("To allow recovery for emotional injuries and mental anguish, without any proof whatsoever that Debra Russaw was actually exposed to HIV or hepatitis is per se unreasonable. … The Russaws cite no authority that damages can be based on <u>imagined possibilities</u>.") (emphasis added).

Gilkes' only claimed injury passes neither legal nor common-sense tests. Legally, there is no recovery for his fear or "stigma" absent an impact, which potential contact with a microscopic pathogen does not provide. In a common-sense context, accepting Gilkes' contention would provide a cause of action to the roughly 209,000,000 American adults who have spent the past seven months wondering if they were exposed to COVID-19 viruses and fearing the consequences of such exposure. Gilkes is not somehow the only person in America who can recover for his fear of a worldwide pandemic, and his claims fail.

### 2. *Georgia law insulates businesses from liability related to COVID-19 transmission.*

Even if Plaintiff could overcome the total preemption of his cause of action, his failure to plead a cognizable fraud claim under Rule 9(b), and his legally unrecoverable claimed damages, Georgia's Covid-19 Pandemic Business Safety protocols would *still* preclude his claims.

Those protocols, encapsulated in O.C.G.A. 51-16-1 *et seq.*, prescribe a specific warning that entities may post on their premises:

> Warning
>
> Under Georgia law, there is no liability for an injury or death of an individual entering these premises if such injury or death results from the inherent risks of contracting COVID-19. You are assuming this risk by entering these premises.

O.C.G.A. § 51-16-3. When a business posts that warning, it generates a rebuttable presumption that any entrant assumed the risk of his actions regarding COVID-19, unless the premises owner

15

displays "gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm." *Id.*

Here, the Georgia Ports Authority prominently displays the required warning at the entrance to its premises and throughout the Garden City container terminal, with relevant documents attached to this Motion to Dismiss as **Exhibit 2**.[7] Plaintiff would have had to pass that warning to enter the Port and perform his longshore duties. If he were actually exposed to COVID-19, that warning would insulate any business conducting business on the premises from liability regardless. O.C.G.A. § 51-16-3. Further, as shown earlier, Plaintiff has not pleaded any facts with particularity demonstrating that Defendants acted recklessly or intentionally. *See supra* Section III.C. He cannot avail himself of any of the exceptions to Section 51-16-3.

### IV. CONCLUSION

COVID-19 has disrupted countless industries and lives. Its reach is global; testing is ubiquitous by design; nearly every American knows someone affected in some way by the pandemic. Against that backdrop, Lester Gilkes claims a unique-to-him cause of action for the fear of catching the virus and the "stigma" of…not catching it.

These are not cognizable claims. Even if Plaintiff's claims were not preempted, they are not properly pleaded and do not state a substantive claim for fraud. And even if they *did*, various defenses would prevent recovery anyway. The Court should ***DISMISS*** Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

This 30th day of September, 2020.

---

[7] Defendant does not believe that Plaintiff will dispute the existence of that warning, and it is a core document establishing existence of a condition or lack thereof in the case. The Court can consider it on a Motion to Dismiss. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (holding that court could take judicial notice of documents filed with SEC for contents thereof).

BOUHAN FALLIGANT, LLP

/s/ TODD M. BAIAD
Georgia Bar No: 031605
LUCAS D. BRADLEY
Georgia Bar No: 672136
*Attorneys for Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC and Marine Transport Management*

One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com
ldbradley@bouhan.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| LESTER GILKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO: |
| | ) | 4:20-cv-00235-RSB-CLR |
| v. | ) | |
| | ) | |
| PHILADELPHIA EXPRESS TRUST, | ) | |
| HAPAG-LLOYD USA, LLC and | ) | |
| MARINE TRANSPORT | ) | |
| MANAGEMENT | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the following parties to this action have been served this day with a copy of the foregoing by regular U.S. mail, postage prepaid addressed as follows:

Brent J. Savage
SAVAGE TURNER DURHAM PINCKNEY & SAVAGE
Post Office Box 10600
Savannah, Georgia 31412

This 30th day of September, 2020.

BOUHAN FALLIGANT, LLP

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No: 031605
LUCAS D. BRADLEY
Georgia Bar No: 672136
*Attorneys for Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC and Marine Transport Management*

One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com
ldbradley@bouhan.com
www.bouhan.com

4811-4892-2060, v. 1