IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LESTER GILKES, | |
| Plaintiff, | CIVIL ACTION NO.: 4:20-cv-235 |
| v. | |
| PHILADELPHIA EXPRESS TRUST; HAPAG-LLOYD USA, LLC; and MARINE TRANSPORT MANAGEMENT, | |
| Defendants. | |

**O R D E R**

This matter is before the Court on Plaintiff Lester Gilkes's Motion to Remand, (doc. 22), and Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC, and Marine Transport Management's Motion to Dismiss, (doc. 9). Lester Gilkes initially filed this action in the State Court of Chatham County after serving as a longshoreman on a vessel with an individual who tested positive for COVID-19. (Doc. 1-6, pp. 6–7.) Gilkes alleges that Defendants knew about the seaman's positive test result but did not inform Gilkes before he started working on the vessel. (Id. at p. 7.) All three Defendants removed the case to this Court, (doc. 1), and filed a Motion to Dismiss, (doc. 9). Gilkes then filed a Motion to Remand the case back to state court. (Doc. 22.) For the reasons explained more fully below, the Court **GRANTS** Plaintiff's Motion to Remand, (id.), and therefore lacks jurisdiction to rule on Defendants' Motion to Dismiss.

**BACKGROUND**

Plaintiff is a resident of Savannah, Georgia, and works as a longshoreman at the Georgia Ports Authority. (Doc. 1-6, p. 4.) On July 11 and 12, 2020, Plaintiff "was working as a

longshoreman aboard the vessel *Philadelphia Express*." (Id. at p. 6.) According to the Complaint, Defendants, collectively, "own, manage, operate, direct, and crew . . . the *Philadelphia Express*." (Id. at p. 5.) Specifically, the Complaint alleges that Philadelphia Express Trust "was the registered owner of" the *Philadelphia Express* and the vessel "was operated, captained and crewed by" Hapag-Lloyd USA, LLC. (Id. at p. 6.)

The Complaint alleges that, while Plaintiff was working aboard the *Philadelphia Express*, a seaman onboard the vessel "was known by Defendants to have COVID-19," but the vessel was not flying its "quarantine flag" as it was required to do. (Id. at p. 7.) "The longshoremen [aboard the vessel] were never advised of this situation" until "[a]fter the vessel left the port, [at which time] it called back in to advise that it had a COVID-19 positive seaman [who had been] on board while the longshoremen were working the vessel." (Id.) The Complaint does not state whether Plaintiff ever came into direct contact with the COVID-19 positive seaman but, at some point, Plaintiff "was prohibited from working and required to [get] a COVID-19 test." (Id.) Plaintiff alleges that because of this he "suffered lost wages" and "was and is stigmatized in his work as a potential COVID-19 carrier." (Id.)

Plaintiff filed his Complaint in the State Court of Chatham County on August 21, 2020, asserting a single cause of action for fraud and deceit against all three Defendants, which he alleges entitles him to damages for mental pain and suffering as well as attorney's fees. (Id. at p. 8.) He specifically asserts that Defendants have acted in bad faith, been stubbornly litigious and/or caused him unnecessary trouble and expense, which he asserts entitles him to recover attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11. (Id.) While, at the close of the Complaint, Plaintiff prays generally for an award of "an appropriate sum to compensate him for his injuries and damages" and the recovery of "reasonable attorneys' fees and litigation expenses," (id.), earlier in

the Complaint, in conjunction with his assertion that jurisdiction and venue are proper in the state court, Plaintiff states that he, "in no event, seeks more than $74,750.00 in this complaint." (Id. at p. 6.)

On September 30, 2020, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1332, based on their claim that the amount in controversy exceeds the sum of $75,000.00 (exclusive of interest and costs) and the action is between citizens of different states. (Doc. 1, p. 2.) Once in this Court, Defendants filed a Motion to Dismiss. (Doc. 9.) Plaintiff filed a Response to this Motion, (doc. 14), and Defendants jointly filed a Reply, (doc. 18). About a month after removal, Plaintiff's attorney sent an email offering to settle Plaintiff's case and another related case "for $70,000 each." (Doc. 24-1, p. 2.) Plaintiff then filed a Motion to Remand, (doc. 22), and Defendants jointly filed a Response, (doc. 24).

## LEGAL STANDARD

Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question or (2) where diversity jurisdiction exists. 28 U.S.C. § 1441(a)–(b). "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). If a case is originally filed in state court and removed to federal court by the defendant, the defendant then "bears the burden of proving that federal jurisdiction exists." Id. If a defendant fails to carry this burden, the Court must remand the suit for lack of subject-matter jurisdiction. Id.; see also 28 U.S.C. § 1447. In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v.

Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added), *abrogated on other grounds by* Powerex Corp. v. Reliant Energy Services, Inc., 551 U.S. 224 (2007).

In 1994, the United States Court of Appeals for the Eleventh Circuit held, in Burns v. Windsor Insurance Company, that, in cases where the complaint demands a specific amount of damages, a "defendant must prove to a legal certainty that plaintiff's claim" will meet the amount-in-controversy requirement for federal diversity jurisdiction. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). However, removal is ultimately a creation of statute and, in 2011, Congress passed the Federal Courts Jurisdiction and Venue Clarification Act, which altered the standard of proof. See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112–63, § 103, 125 Stat. 758, 762 (codified as amended at 28 U.S.C. § 1446(c)(2)). Following that amendment, 28 U.S.C. § 1446(c)(2) provides that:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—(A) the notice of removal may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2). The Supreme Court of the United States recognized that this updated statute altered the standard of proof, explaining that "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 88 (2014). In this case, Defendants based their removal on section 1332(a), (doc. 1, p. 2), and Georgia law permits recovery of damages in excess of the amount Plaintiff stated, in his Complaint, that he seeks. See O.C.G.A. §

9-11-54(c)(1) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."). Other district courts in this circuit have determined that, when state law allows for damages exceeding the amount demanded, then the "preponderance of the evidence" standard applies and not the pre-amendment "legal certainty" standard. See, e.g., Heath v. ILG Techs., LLC, —— F. Supp. 3d ——, 2020 WL 6889164, at *4 (N.D. Ga. 2020) ("[T]his Court will consider the evidence presented by both sides and determine whether the requirement has been met by a preponderance of the evidence."); Harris v. Aghababaei, 81 F. Supp. 3d 1278, 1281 (M.D. Ala. 2015) ("[T]he court finds it must evaluate whether the [d]efendants have shown, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000."); David v. USAA Cas. Ins. Co., No. 5:21cv27-MW/MJF, 2021 WL 1152934, at *1 (N.D. Fla. Mar. 24, 2021). Accordingly, the Court will apply the preponderance of the evidence standard here.

**DISCUSSION**

In Response to Plaintiff's Motion to Remand, Defendants argue that they have carried their burden of showing that the amount in controversy exceeds $75,000. (Doc. 24, pp. 8–15.) They also argue that "Plaintiff waived his jurisdictional arguments when he sought affirmative relief from this Court." (Id. at pp. 15–17.) The Court will examine the issue of waiver first. Then, the Court will address whether the amount in controversy exceeds the jurisdictional requirement.

**I.     Waiver of Jurisdiction**

Defendants argue that Plaintiff has waived any jurisdictional argument by seeking affirmative relief after removal. (Id.) Specifically, they assert that Plaintiff first sought affirmative relief in his Response to Defendants' Motion to Dismiss, by asking the Court to grant him leave to amend his Complaint. (Id. at p. 15.) They also assert that Plaintiff's Opposition to Defendants'

Motion to Stay Discovery constituted a request for affirmative relief. (Id.) Defendants characterize Plaintiff's basis for seeking remand—his position that the amount in controversy is insufficient for diversity jurisdiction—as a "procedural objection[]" that can be waived. (Id.)

It is true that "[a] procedural defect in removal, such as untimeliness, does not affect the federal court's subject matter jurisdiction and therefore may be waived." Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 528 (8th Cir. 1996). However, the amount-in-controversy requirement is not some mere procedural defect but goes to the very heart of the Court's subject-matter jurisdiction. See 28 U.S.C. § 1332(a); see also Walker v. Sun Trust Bank of Thomasville, 363 F. App'x 11, 15 (11th Cir. 2010) (per curiam) ("Diversity jurisdiction exists where the plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000."); Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985) ("[L]ack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.") (quotation and citation omitted). "Under the law of this circuit, . . . parties cannot waive subject matter jurisdiction, and [a court] may consider subject matter jurisdiction claims at any time during litigation." Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999); see also Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 436 F. App'x 888, 894 (11th Cir. 2011) ("Plaintiffs' objection to the [removal] in this case was based . . . on the lack of subject matter jurisdiction . . . , which can never be waived.").

One of the cases cited by Defendants in support of their waiver argument, Pippen v. Indymac Bank/One West Bank, perfectly illustrates this point. (See doc. 24, pp. 15–16 (quoting Pippen v. Indymac Bank/One West Bank, No. 1:09-CV-3570-CAP, 2010 WL 11598157, at *1 (N.D. Ga. Feb. 10, 2010)).) In that case, the plaintiff sought remand on procedural grounds. Id. While the district court found that the plaintiff had waived this argument by moving for default

against some of the defendants in the case, the court then proceeded to analyze whether the amount-in-controversy requirement was satisfied. Id. Thus, the court implicitly recognized that this requirement could not be waived. Id. Accordingly, for the above reasons, the Court finds that Plaintiff has not waived his ability to argue that the amount in controversy in this case is insufficient for federal subject-matter jurisdiction.[1]

## II.     The Amount-in-Controversy Requirement

Plaintiff argues that remand is appropriate because "Defendants cannot meet their burden of demonstrating that the amount in controversy exceeds $75,000." (Doc. 22, p. 3.) Plaintiff specifically points to his own Complaint which states that "[t]he Plaintiff, in no event, seeks more than $74,750.00 in this complaint." (Doc. 1-6, p. 6.) In Response, Defendants argue that the Court should not defer to the Complaint and should "consider Defendants' evidence that the amount in controversy exceeds the minimum." (Doc. 24, p. 5.) As an initial matter, while a statement in a complaint does not by itself end a court's inquiry into subject-matter jurisdiction, courts in this circuit do give substantial weight to such statements. See, e.g., Harris, 81 F. Supp. 3d at 1283 ("[T]he court takes seriously the Plaintiffs' consistent representations through counsel of their own damages as not exceeding $74,500."). In addition, in the Motion to Remand, Plaintiff's counsel reaffirms that Plaintiff seeks "no more than $74,750, under **any circumstances**." (Doc. 22, p. 5 (emphasis in original).) Plaintiffs' counsel are officers of this court and have a duty of candor to the Court, so the Court considers these representations to be true. See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 808 (11th Cir. 2003) ("Because McKinnon's lawyers are officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making

---

[1] Indeed, this is something the Court could raise and address *sua sponte*. Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (Federal courts "are obligated to inquire into subject -matter jurisdiction sua sponte whenever it may be lacking.").

a representation to the court for an improper purpose, such as merely to defeat diversity jurisdiction, we give great deference to such representations and presume them to be true."). The Court views all of this as strong evidence supporting a finding that the amount in controversy is below the jurisdictional threshold.

Defendants argue that the Court should consider the possibility of Plaintiff recovering punitive damages in an amount that would put him over the jurisdictional threshold. (Doc. 24, pp. 9–10.) They point out that Georgia law allows juries to award punitive damages for some tort claims, including fraud claims. (Id. at p. 9 (citing O.C.G.A. § 51-12-5.1(b)).) And the Eleventh Circuit has stated that "[s]tate law is relevant to [the] determination [of whether the amount in controversy is sufficient] insofar as it defines the nature and extent of the right plaintiff seeks to enforce." Broughton v. Fla. Int'l Underwriters, Inc., 139 F.3d 861, 863 (11th Cir. 1998) (first alteration in original) (quoting Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1012 (5th Cir. 1979)). However, while Georgia law does allow for punitive damages, the law is also clear that "[a]n award of punitive damages must be specifically prayed for in a complaint." O.C.G.A. § 51-12-5.1(d)(1); see also Drug Emporium, Inc. v. Peaks, 488 S.E.2d 500, 505 (Ga. Ct. App. 1997) ("[Plaintiff] is not entitled to punitive damages because the complaint's prayer for relief contains no specific prayer for punitive damages . . . ."). Plaintiff does not mention punitive damages in his Complaint, much less specifically pray for them. As such, Plaintiff's Complaint at the time of removal was insufficient to recover punitive damages. See PTA–FLA, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal."); cf. Smith v. Automatic Data Processing, Inc., No: 8:20-cv-2936-CEH-CPT, 2021 WL 2678762, at *2 n.1 (M.D. Fla. June 30, 2021) ("Complaint did not seek punitive damages at the time of removal" even when the plaintiff

indicated that "he reserve[d] the right to assert a claim for punitive damages."); Varner v. Caliber Home Loans, No. 1:17-CV-773-WKW; 2018 WL 3023091, at *2 (M.D. Ala. June 18, 2018) ("[A]lthough a fraud claim, in an appropriate case, can support a punitive damages award, [d]efendant does not explain how there can be a potential for an award of punitive damages when the pleading does not ask for that form of relief."). Accordingly, the Court need not consider them. See Holley Equip. Co. v. Credit All. Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered.") (internal citations omitted)

Defendants next argue that Plaintiff's request for attorney's fees satisfies the amount-in-controversy requirement. (Doc. 24, pp. 11–15.) "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." Federated Mut. Ins. Co., 329 F.3d at 808 n.4. Under Georgia law, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." O.C.G.A. § 13-6-11. Plaintiff does pray for attorney's fees in his Complaint, (doc. 1-1, p. 8), so the Court will take them into account.

Defendants assert that the Court should consider all attorney's fees that could accumulate over the course of the entire litigation. (Doc. 24, pp. 12–14.) Alternatively, they contend that even if the Court were to consider only the fees that Plaintiff incurred before the time of removal, the amount-in-controversy requirement would still be satisfied. (Id. at p. 14.) The Eleventh Circuit has not answered the question of how attorney's fees should be calculated and considered in these

circumstances, and other circuits are divided on the issue. Compare Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 959 (7th Cir. 1998) ("[L]egal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed.") with Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 796 (9th Cir. 2018) ("[W]e do not share the Seventh Circuit's concern that calculating future attorneys' fees is inherently too speculative."). Some district courts within this circuit have included the potential attorney's fees that could accumulate throughout litigation when calculating the amount in controversy. See, e.g., Gleason v. Roche Labs., Inc., No. 3:08-cv-1172-J-12HTS, 2009 WL 728531, at *2 n.1 (M.D. Fla. Mar. 19, 2009) ("[B]ecause she is entitled to an award of attorneys' fees if she prevails, attorneys' fees for the entire case could be considered in determining the amount in controversy were relevant evidence to be submitted to establish such amount."). However, many of the courts adopting this approach do not provide an explanation of their reasoning. See, e.g., Hall v. Travelers Ins. Co., 691 F. Supp. 1406, 1409–10 (N.D. Ga. 1988) (court held without explanation that potential future attorney's fees could be considered). Furthermore, it appears that more courts in this circuit have reasoned that the amount of attorney's fees should be calculated at the time of removal. See Shelly v. Target Corp., 446 F. Supp. 3d 1011, 1013–14 (S.D. Fla. 2019) (collecting cases); Bradley v. Hartford Life & Accident Ins. Co., No. 2:10-CV-00017-WCO, 2010 WL 11597137, at *4 (N.D. Ga. July 7, 2010) ("[M]any courts in the circuit have adopted the time of removal test, basing the decision to remand upon whether or not the attorney's fees accrued as of the time of removal were sufficient to satisfy the amount in controversy."). One district court that favored the majority position provided a particularly cogent explanation for this approach:

> When attorneys' fees are recoverable—either by contract or by statute—only fees incurred *at the time of removal* should be included in the amount-in-controversy

10

computation. This principle follows naturally from the well-trodden rule that, in a removed case, jurisdiction must be determined "at the time of removal, not later." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010). And, "at the time of removal," a plaintiff has no legal entitlement to attorneys' fees that have not yet been billed.

Torreyes v. Godiva Chocolatier, Inc., 424 F. Supp. 3d 1276, 1282 (S.D. Fla. 2019). This approach also comports with the Eleventh Circuit's guidance that "all doubts about jurisdiction should be resolved in favor of remand to state court." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). Federal courts should always be mindful that their judicial power is limited and should "guard against anything that disrupts the delicately balanced system of dual sovereignty that is one of the foundation stones underlying our Constitution." Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 701 F.3d 669, 680 (11th Cir. 2012). In light of all the foregoing, the Court is persuaded to follow the well-reasoned majority view in this circuit and will not consider future, unbilled attorney's fees in determining the amount in controversy.

Defendants further argue that "even if *only* pre-removal attorneys' fees are considered, this case still meets the threshold" needed for the Court to exercise diversity jurisdiction. (Doc. 24, p. 14 (emphasis original).) Defendants do not provide any new evidence to support this assertion but point to evidence that they submitted with their Notice of Removal. (Id.) One item appears to be a printed copy of the biographical information for Brent Savage, one of Plaintiff's attorneys, pulled from his law firm's website. (Doc. 1-2.) The second exhibit is an affidavit that was executed by Mr. Savage in 2016 and submitted in another (unrelated) case. (Doc. 1-3.) Therein, Mr. Savage provides information about his professional background and experience as an attorney and then proceeds to opine that a reasonable hourly rate for one of the attorneys involved in that unrelated case would be $250.00 per hour. (Id.) The final exhibit is a "Statement of Account" from Mr. Savage's law firm that lists the fees Mr. Savage's law partner claimed to have incurred in a

11

different case. (Doc. 1-4). Nothing in these documents contains any information concerning how much work Plaintiff's attorney performed before removal or, more importantly, how much Plaintiff had been charged as of the date of removal.[2]  The evidence provided by Defendants completely fails to show that Plaintiff's attorney's fees are sufficient to meet the amount-in-controversy requirement especially considering Plaintiff's statement in his Complaint that he seeks no more than $74,750.00.

Defendants make one final argument that the amount-in-controversy requirement is satisfied in this case. (Doc. 24, p. 14.) First, they point to a settlement offer made by Plaintiff's attorney. (Doc. 24-1, p. 2.) In it, Plaintiff's attorney offered to settle Plaintiff's case and another factually related but separate case that is also before the Court "for $70,000 each."[3]  (Id.) Plaintiff's attorney has not sought remand in the other case. See generally Roberts v. Philadelphia Express Tr., 4:20-cv-236 (S.D. Ga. Sept 30, 2020). Defendants argue that this email shows that Plaintiff's attorney valued both of these cases equally, and that, by not seeking remand for the other case, Plaintiff has tacitly admitted that both cases belong in federal court. (Doc. 24, p. 14.) The Court finds this argument unpersuasive for several reasons. First, Defendants cite no authority indicating that a choice by counsel for a plaintiff in one case impacts a different plaintiff's right or ability to seek remand, if he so chooses, in a wholly separate case. There are myriad reasons one

---

[2] Indeed, the "Statement of Account" attached to the Notice of Removal starts with the item "Motion for Summary Judgment response" and goes through "Prepare for trial, open and voir dire, witness list, review exhibits." (Doc. 1-4, pp. 1–3.) It does not provide any information about fees connected to the early stages of the litigation process.

[3] The email goes on to state that "[w]ith all the pre-trial litigation and discovery these cases entail, your attorney fees will surely exceed [$70,000] if we take these cases to trial." (Doc. 24-1, p. 2.) Despite the clear language used in the email (". . . *your* attorney fees will surely exceed . . .," (id. (emphasis added)), Defendants claim that this demonstrates that Plaintiff's counsel believes that *his own* attorney's fees will exceed $70,000. (Doc. 24, pp. 6, 17.) Plaintiff's counsel says nothing in the email about his own fees. Moreover, as the Court has already explained, only attorney's fees that accrued before removal are included in the amount-in-controversy determination, so this statement about potential fees that could accrue if the case went to trial does not impact the analysis.

could fathom why one individual may want his case to remain in federal court while another individual would prefer to have his case returned to a state court, and these are decisions for litigants and their counsel to make in each separate case.  Indeed, Defendants' argument goes directly against the "long[-]recognized [principle that] plaintiffs are the master of the complaint and are free to avoid federal jurisdiction, by structuring their case to fall short of a requirement of federal jurisdiction."  Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013) (internal citation and quotations omitted).  Next, under Eleventh Circuit precedent, a settlement offer cannot establish the amount-in-controversy requirement, though it "counts for something." Burns, 31 F.3d at 1097.  The Court notes that Plaintiff only demanded $70,000 in the settlement offer which is below the amount-in-controversy requirement and further strengthens Plaintiff's argument for remand.  Finally, although Defendants argue that this case and Roberts are "twins [that] must travel together," (doc. 24, p. 14), there are key differences between the two complaints.  Although the plaintiff in Roberts and Plaintiff here both allege that they were aboard the *Philadelphia Express* with a COVID-19 positive seaman, the plaintiff in Roberts alleges that he actually contracted COVID-19 "because of his exposure on the vessel," which Plaintiff does not.  Roberts v. Philadelphia Express Tr., 4:20-cv-236, doc. 1-1, p. 9 (S.D. Ga. Sept. 30, 2020).  Crucially, the complaint in Roberts does not include an assertion that the plaintiff will in no event seek more than $74,750.00.  Moreover, unlike Plaintiff's Complaint, the Roberts complaint seeks punitive damages, (id. at p. 11)..   For all of these reasons, the Court finds that the settlement offer itself and any actions taken in a separate case by Plaintiff's attorney are insufficient to show that the amount-in-controversy requirement is satisfied.

Ultimately, Defendants have the burden of establishing jurisdiction after removing the case to this Court.  In trying to meet this burden, they are only able to put forth evidence concerning

the credentials of one of Plaintiff's attorneys, (doc. 1-2; doc. 1-3), a "Statement of Account" for an attorney not involved in this litigation from another case that does not include fee information for the early stages of litigation, (doc. 1-4), and a settlement offer for less than the amount-in-controversy requirement, (doc. 24-1). The Court finds this to be insufficient to establish the amount in controversy by a preponderance of the evidence particularly in light of Plaintiff's multiple assertions that he will, in no event, seek more than $74,750.00.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff Lester Gilkes's Motion to Remand, (doc. 22), and **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Chatham County, Georgia. The Court further **DIRECTS** the Clerk to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**SO ORDERED**, this 1st day of September, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA